2-16-0454 People of the State of Illinois Plaintiff, Appellee, v. James Rensberger, defendant and appellant. I bring on behalf of the defendant and appellant, Ms. Anne Fick. I bring on behalf of the plaintiff and appellee, Mr. Barry W. Davis. Thank you. Ms. Fick, on behalf of the appellant, you may proceed. Thank you, Your Honors. Good morning, Counsel. Your Honors. My name is Anne Fick. I'm from the Office of the State Appellate Defender, and I represent the defendant and appellant, Mr. James Rensberger. May it please the Court. It is the State's burden to prove beyond a reasonable doubt that on the evening of January 20, 2016, Mr. Rensberger was under the influence of alcohol to such a degree that it rendered him incapable of driving safely. The State failed to meet that burden. As with most DUI cases, this case turns on facts. The burden or the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Correct? On appeal. Yes. Isn't that a tough burden? Absolutely. But I believe it's not much better. Excuse me? This was a bench trial. Yes. So that judge was supposed to be the rational trier of fact, right? Yes. Okay. Now that we've laid the groundwork parameters, go ahead. There wasn't any evidence here that the defendant's accident was caused by anything other than wintry road conditions. He was on witness, right? I'm sorry, what did you say? He was on witness, correct? Nobody can read it. Correct. There was no witnesses. Please pull up. He's in the yard, but nobody knows exactly what happened there. Exactly. Some might say that would be unusual, but given the weather, perhaps you have a point on that. Yes. Again, as far as going through those conditions very briefly, the video shows them. It was dark. It was cold. There was snow on the ground, and the citation itself describes the road as having both dry and ice. So, so far, so good. Let's assume we agree with you. It was an unavoidable accident. It could have happened to a cold, sober person. What happens after that? There's not enough evidence to show that he was actually impaired enough to, or impaired, to be incapable of driving safely. The evidence of impairment is contradicted by the video. Okay, let's cover that. Ignoring the accident, the officer testified he smelled alcohol. The defendant had watery eyes. He admitted drinking, consuming alcohol, but was evasive about how much he had. Officers say he had trouble finding his driver's license, although it was obviously right in front of him, according to the officer. And he refused to submit to the field sobriety tests. And that, under the law, can be viewed as evidence of a consciousness of guilt, correct? Correct. So you've got all of these things, and how would they just explain the way is pure coincidences? They are, the evidence is not strong enough to, looking at the totality, to look at those factors and this accident and see them as being basically one and the same. So you're saying he could have had all of those things, but that still doesn't prove that he was not impaired? Correct. And as far as some of those factors go, he was very cooperative getting out of his vehicle. There are many things that are going for him. His eyes were not glassy or bloodshot. They were watery. And the deputy on cross-exam said that that could be caused by many reasons. He was not speaking incoherently. He was not sleepy or tired. The deputy testified that he was swaying enough to be noticeable, but that's not evident on the video. Nor is it evident that he was kind of mumbling. He was speaking quietly at best. He walked steadily out of his vehicle. After an accident on a snowy road, it's remarkable that he was able to walk steadily out of his vehicle. And in fact, the judge referenced that there was no balance issues in her ruling. From what she saw at the jail on him? From what she saw at the jail. That was specific to the jail, but she also noted that he was steadily walking out of his vehicle. The state mentioned that the defendant was leaning forward when he was looking for his license. The obvious reason is because it was dark outside. The car's headlight helped illuminate his license. And the deputy testified that after he flashed his flashlight on the wallet, then Mr. Wentzberger was able to find his license. At best, he was... Is it normally hard for someone to find a license in their wallet? That doesn't work against the defendant? I can only speak for myself and my licenses. Are you going to tell me you can't find the license in your wallet? In the dark, maybe she can. If you want me to testify to my experience. Well, we don't want you to testify, obviously. Yes, that would be unsatisfactory. Outside of the record, I can say that I use different wallets sometimes in different pockets. What about this fact? And again, you're right. These cases turn on specific facts. Some of these things could be neutral and innocuous. Some of them obviously trifecta. You all know it draws inferences. What about the fact that he initially said he didn't remember how much he had to drink? Is that indicative of a sober person or one who's been drinking a lot? It's not indicative of someone who is extremely impaired. He said he didn't know. He said he had two afterwards. So he did decide that he... First he said he didn't know. Then he remembered two. Correct. So from the evidence, he had two beers. And based on that, as well as these various factors that really do not rise to the level of beyond reasonable doubt, as we all know, that's the standard at the trial court level. It's not, was he more likely than not guilty? It's not, could he probably have been guilty? It's not, you know, even... It's equally plausible that he was guilty. It has to be beyond a reasonable doubt. And in this case, the state did not meet its burden. Let me ask you a point of question. I've always been sort of fascinated by these legal principles here. And we see this sometimes, but it actually makes a lot of sense. Quoting the well-established case law in this particular place here. The trial effect is not required to disregard inferences and search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. When we make the argument, it almost invites us to do that, because you're saying there's sort of a neutral, innocuous explanation to all of these things, you know, that he says and doesn't remember. So how do we then, you know, without doing violence to this principle exceed to your argument, why don't you ask us to substitute our judgment and raise these seemingly innocent things, or at least arguably consistent with innocence, and raise them to the level of beyond a reasonable doubt? Your Honor, the trial judge has afforded great deference, but her ruling is not infallible, and reasonable people can make unreasonable decisions. The totality of the evidence, which she said shows indications of impairment, simply does not rise to the level that is required. There is not a presumption of guilt. There is a presumption of innocence. So as far as looking at these factors in terms of this innocuous accident, that does not equal up to beyond a reasonable doubt. Wouldn't it probably have been wiser to take a jury trial on this case? That's a difficult question, Your Honor. I don't know if I could say one way or the other. Possibly. I'm not sure. So, Your Honors, again, just in totality and summary, the evidence here, as I said, it did fall far short of reasonable doubt. The trial judge has afforded great deference, but her ruling is not infallible. The evidence also was contradictory. Despite the fact that she said the deputy had credibility, we see on the video that he said some things that were not evident. Thank you. Mostly there was – sorry. I thought you were done. Thank you. A little bit more. Mostly the significant part is that nobody knows how this accident happened. There's no obvious or indication that it was alcohol. The roads were dark. It was snowy. It was icy. And that is the likely inference that could be involved. So if there's no other questions. I have a question for you. Yes. All of the factors that you would have us rely upon to find that this was not proof beyond a reasonable doubt, the other explanations for perhaps why his eyes were watery or why he was unable to find his license or why he was leaning forward, all of those things, wouldn't that be evidence that would come in if the defendant testified and explained, I was leaning forward because I couldn't see in the dark. I was leaning to use the headlight or things like that. How do we make those inferences, particularly with the standard unreviewed, when we have nothing, no evidence from the defendant, only argument? Well, the defendant does not have to present evidence, obviously. No, he does not. But when you want me to say, well, the explanation was he couldn't see. I don't know that unless he testifies. I'm making a pretty substantial leap. I could just as easily say, well, he was leaning because he couldn't stand up straight. And just as easily is not the burden. The burden that we rely on. Well, we take inferences from the picture. He can't stand up straight. He is not standing up straight. A reasonable inference is he's intoxicated. If he testifies and says, oh, he's intoxicated, I was trying to use the headlight. So many of your arguments, how do we consider those in the absence of any explanation and that the inference the other way that apparently the trial court made was something that no rational trial effect would make? The inferences, I believe, again, it comes back to the fact that you can have all of those factors, but do they render him incapable of driving safely? There is no evidence of that here. And that's the main reason why this is not beyond a reasonable doubt. If that answers your question. I hate to belabor this, but, you know, and I admitted at the beginning, you know, somebody having an accident in icy conditions, okay, that in and of itself is not going to establish guilt beyond a reasonable doubt, certainly. But do we actually exclude that? I mean, there's not an inference to be drawn on top of all of this other stuff, that going off the road into somebody's yard even in bad weather, can't that be an inference that would at least slightly corroborate the intoxication argument? He is in somebody's yard. How he got there is, you know, subject to debate. But it doesn't certainly establish that the trial effect, again, you know, was wrong in their analysis, does it? The trial effect, equally plausible no matter the inferences. The inference can be made either way if it's equally plausible. That is not beyond a reasonable doubt, Your Honor. Okay. But, again, as Justice Jorgensen alluded to, how do we then do that without violating that document? You're really asking us in the absence of any evidence clearly in the record testified to to elevate these things, search out a series of theories and elevate them beyond a reasonable, you know, failure to go beyond a reasonable doubt. What you can rely on as far as the law is that it has to be shown that he was incapable of operating this vehicle safely. His mental capacities and physical capacities were not so impaired that it prevented him from doing so. There's no evidence that it was. That's the law on which this relies. I hate to belabor this, but I'm going to ask you. Oh, really? You're looking at me for doing this. When police got there, what was your client doing? Your Honor, honestly, I do not know. Wasn't he sitting in the trunk, like, kind of spinning the tires? He was trying to get out. Yes, he was trying to get out, Your Honor. That's my only question. If there are no other questions, we do ask that Mr. Wentzberger's conviction be vacated as well as the finding of the violation of his terms of probation. Thank you. Thank you. Mr. Fickson on behalf of the people. Good morning again. I'm Barry Jacobs on behalf of the athlete people of the state of Illinois. May it please the Court and counsel. As Your Honor has correctly noted, the standard under review is not to retry the defendant, but to determine whether or not the conviction should be reversed if the evidence is so unreasonable or unprovable that a reasonable doubt of defendant's guilt is raised. Here, that simply has not been shown by appellant. The evidence of impairment at trial that the Court considered, and I think this Court correctly recognizes it, the evidence of how the accident occurred was lacking, and the Court here acknowledged that there was no evidence the defendant was involved in a single vehicle accident and made no statements about how it happened. As Your Honor has also noted, when the officer arrived and he saw that the defendant had driven over a fence and was stuck in a yard trying to get out. I'm sorry. Try not to impair readers there. I thought you were reaching for a pendant for a second. So he observed this, and the Court, as evidenced by its finding that there wasn't enough evidence to prove the defendant guilty of failure to reduce speed to avoid an accident, simply moved on to the indicators of impairment, which this Court also elicited during Cowns' argument. But those were based upon the credible testimony of the officer. I apologize for mispronouncing his name. I believe it's Officer Zawodnski. And he testified credibly, although in a somewhat... And the Court indicated that she found him to be credible. She did, extremely credible. She found no inconsistencies with the video, either the squad cam video or the booking video. She, in fact, noted that he appeared to have good balance, so that wasn't an issue. The deputy did testify that when he stepped out of his car, or out of his truck, rather, he did so steadily, but that the deputy had observed some swaying enough to be noticeable. The deputy, the way the testimony was brought out, the deputy then said he rode around to the front of the car. And at that point, it's, you know, the State's in agreement, it's questionable if there's any swaying visible at that point. However, the other indicators that the deputy testified about, primarily the strong odor of alcohol, both on the breath of the defendant and in the car, or in the truck, the vehicle, the defendant had admitted to drinking earlier, but initially couldn't say how much. And when the deputy questioned him, did he drink too much to remember, he said, two beers. When he asked him where he'd been drinking, he said, here. And upon further questioning about, did that mean on the roadway, the defendant answered, no, at a bar, but he couldn't say what bar or which bar. In addition, there's the evidence, both on the video and through testimony, that the defendant's speech, although understandable, was somewhat mumbled. Eyes were watery. He had difficulty finding his license. That's indicated on the video, as well as through the testimony. And, notably, he refused to perform any field sobriety tests, and later refused to submit to a PBT, a portable breath test. Before the deputy could explain that the defendant was under arrest, the defendant actually offered himself up to be handcuffed. All these indicators led this deputy to testify in this way, and led the deputy to his opinion that the defendant was impaired and unable to operate the vehicle safely. Now, didn't the judge, I believe, kind of jump to a conclusion that he knocked down the fence, correct? I think she mentioned that in her ruling, that he knocked the fence down. She did mention it, and, actually, that's a record testimony that when the deputy arrived, the truck was sitting over a fence in someone's yard, attempting to back out. And I also point out in my brief that if you watch this video, this squad cam video, as he's transported to the station, the defendant actually makes reference to paying for the fence that he damaged, that he's not some sort of asshole. So there is evidence of record that a fence was damaged in this accident. Again, it's not clear how the accident actually occurred, but I do believe, and I think the court did as well, that it's a factor that the court could consider as evidence of intoxication or impairment. This case, I did cite People v. Roberts, which is a 2nd District case in my brief, and although Roberts did involve an accident, it was a case of weaving in a lane where a car was stopped. That case was actually the issue was whether or not the portable breath test was admissible. But the court affirmed the conviction based upon slurred speech, a bit of unsteadiness on feet, and the refusal to perform the physical sobriety testing. This is somewhat, in fact, very similar, except, as I said, in that case it was weaving. In our case, there was an accident that brought this defendant to the attention of the police. So based upon the credible testimony that was elicited at the trial and the video evidence, it's a safe position that the evidence here was not so unreasonable or improbable that any rational trier of fact could have found the element of impairment. In fact, it was more than sufficient, and for that reason, we would ask that you affirm the conviction and the granting of the petition to revoke, which was based upon the DUI conviction and the admission by the defendant that he had been drinking. If there are no other questions, there's no questions. I believe there are. Thank you. Thank you. All right, Ms. Fick, you may address the court as well. Thank you, Your Honor. I want to respond to four things. First, Mr. Jacobs mentioned the offer to be handcuffed by Mr. Rendsberger. How do you read that? He wasn't resisting. He was being compliant. He had already been told he was under arrest, so he was compliant, and he said he resigned to the fact that this was going to happen. Was he already told he was under arrest, or was that before? Was it in the anticipation of his arrest? The record says that he was told he was under arrest, put his hands behind his back, but the officer had not finished explaining why he was under arrest. Oh, I see. So, again, that's... So he withdrew from that as a cooperative? Correct, yes. Second, the factor of the fence being knocked down, that's not an indication of impairment because property damage happens in all kinds of accidents. It's just another reason, you know, that this happened. B, Robert's case is differentiated because the officer saw him leaving. That is a big difference. And then, finally, the odour and the smell cannot sustain a DUI conviction. We all know that alcohol varies, as I stated in my brief, the way that it impacts a person. Are there any other questions? No, I don't believe there are. Thank you, Ms. Smith. Thank you. All right, I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement and a written decision issued in due course. At this time, we will stand.